UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION

STANISLAV LAZAROVSKY,                              )
On behalf of Plaintiff and a class,               }
                                    Plaintiff,     }         Civil Action, File No.
            v                                      }
                                                   }         14-CV-1930
CACH, LLC,                                         }
KEVIN Z. SHINE, PLLC                              }
KEVIN Z. SHINE,                                    }
JASON B. DESIDERIO, AND                           }
JOHN DOE 1-10 BEING THOSE                          }
INDIVIDUALS CONTROLLING,                           }
SUPERVISING OR MANAGING                            }
THE ACTIVITIES COMPLAINED OF                       }
IN THIS ACTION                                     }
                                    Defendants.    }

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12 (C)**

**CAUSES OF ACTION NOT MOVED TO DISMISS**

CACH, LLC'S Motion For Judgment On The Pleadings does not address Plaintiff's First, Second or Fourth Cause of Action. Therefore, these three causes of action must survive CACH's motion.

The First and Second Cause of Action alleges violations of 15 USC 1692e (10) and 15 USC 1692e (14). The Fourth Cause of Action alleges violations of 15 USC 1692e (5), 15 USC 1692e (2)(A), 15 USC 1692f, and 15 USC 1692d. Neither the First, Second or Fourth Cause of action alleges a violation of only 15 USC 1692e.

Despite these causes of action clearly alleging violations of specific subsections of 15 USC 1692e, CACH, LLC's motion sets forth only one argument covering "various sections of 15 U.S.C. 1692e". This argument starts on page 15 in section B. of its Memorandum.

1

Since the First, Second and Fourth Cause of Action clearly allege violations of specific subsections of 15 USC 1692e, Plaintiff asks this court not to consider any portion of any Reply submitted by CACH, LLC addressing the specific subsections of 15 USC 1692e.  This Complaint was filed on March 26, 2014; a pre-motion conference occurred on November 12, 2014 wherein this court and both parties specifically addressed the distinction between an alleged violation of 15 USC 1692e and a violation of subsection 14 of 15 USC 1692e.  Finally, on December 9, 2014, my co-counsel emailed Defendants' counsel a letter specifically addressing the distinction between an alleged violation of 15 USC 1692e and a violation of subsection 14 of 15 USC 1692e.  See Exhibit A.  The letter even set forth supporting case law.  For whatever reason, CACH, LLC chose to ignore the issue of a violation of subsection 14 of 15 USC 1692e, ignore the case law set forth in the aforementioned letter, and base its motion solely on the premise that one standard governs all violations of 15 USC 1692e.  CACH, LLC has had every chance to address the causes of action alleging the violation of several specific subsections of 15 USC 1692e.  It would be unfair to Plaintiff and completely unwarranted to allow CACH, LLC to address for the first time in a Reply the violation of several specific subsections of 15 USC 1692e.

**1692e (14)**

1692e(14) prohibits the following:

"The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

The court in Boyko, infra found that numerous cases have held that "the true name of a debt collector is limited to its registered or licensed name.".  There is no dispute by any defendant in the case at bar that CACH of Colorado, LLC is not the true name of CACH, LLC or that CACH of Colorado, LLC is a false non-existent entity.  Also, for the reasons described below in regard to

2

whether or not there has been a violation of 1692e(5), Defendants are barred by res judicata/collateral estoppel from arguing otherwise in this case.

The sole issue in this case appears to be whether or not to state a claim under 1692e(14) a Plaintiff must plead or prove that it is materially deceptive for a debt collector to use a name other than its true name.  CACH makes a sole argument for the dismissal of each cause of action which alleges a violation of any subsection of 15 USC 1692e as follows:  Any false, deceptive, or misleading representation must be "material" in order to violate any subsection of 15 USC 1692e.  This all-inclusive materiality argument is set forth in the following two portions of CACH, LLC's Memorandum:

> "Moreover, many courts in this and other circuits have held, "to satisfy the FDCPA, the alleged act must, at a minimum. Involve a misrepresentation that is material'".  Plaintiff's Memorandum, P. 15.

> "Plaintiff, in the instant case, cannot plausibly claim that he didn't pay his debt because the difference between the words "CACH, LLC," and "CACH of Colorado, LLC" was enough to deceive him or confuse him. The mischaracterization of CACH's name in the underlying State Court complaint is simply not a material misstatement and can't possibly be considered as actionable under the FCPA."  Plaintiff's Memorandum, P. 17.

Plaintiff does not dispute that the courts clearly have held that "materiality" is an element of any violation of 1692e (10).  However, as to CACH, LLC's argument that every subsection of 1692e requires "materiality", the court in <u>Boyko</u>, *supra* (For the court's convenience, this decision is annexed as Exhibit B.) expressly rejected this identical argument in a case alleging the use of a name other than the debt collector's true name in violation of 1692e (14).

In <u>Boyko v American International Group, et. al., Case No. </u>08-cv-02214 (District Court, NJ), the court expressly held that it did not and explained why as follows:

> 1692e (14) "does not require an affirmative pleading that a person was mislead by the use of an improper name; indeed such deception is

3

assumed where a party pleads that he received an improper communication. Section 1692e begins by stating: "A debt collector may not use any false, deceptive, or misleading representations in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section[.]" From there, the statute specifically lists sixteen prohibited actions. Subsection 14 does not include any language to the effect of "that deceives the party." Thus, subsection 14 must be read to be a per se deceptive act. "must be read to be a per se deceptive act. In other words, if a party can prove, for example, that he received a letter using a name other than the debt collector's true name, he has proven a deceptive practice."

It is black letter law that a court first must look to the plain language of a statute to interpret it and determine its applicability to the case at bar.  In the context of interpreting the text of the FDCPA, the United States Court of Appeals for the Second Circuit has explained as follows in Vincent v. Money Store, 736 F.3d 88 (2nd Cir., 2013):

> "To resolve this question of statutory interpretation, we begin with the statutory text. *See Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)). Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.,* 473 F.2d 1210, 1214 (2d Cir.1973); *accord Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir.2002) (collecting cases); *see also Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices.")."

See also Serna v. Law Office of Joseph Onwuteaka, P.C., 732 F.3d 440 (5th. Cir., 2013).  This requirement of statutory interpretation coincides with the interpretation of 1692e(14) by the court in Boyko, supra.  Other than as stated by the court in Boyko, *supra* , there is no other reasonable way to read 1692e in line with the rules of statutory construction.

15 USC 1692e is set forth below:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of --

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to --

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this title.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

5

(13) The false representation or implication that documents are legal process.
(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.
(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.
(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act."

There can be no argument that the initial sentence of 1692e as well as each subsection of 1692e amounts to an independent and separate violation of a consumer's rights and that each subsection must be independently interpreted.  There is no rule regarding statutory interpretation that holds otherwise.

In fact, a true and accurate reading of 1692e reveals that it really consists of two parts with the second part consisting of 16 separate subparts.  The first two sentences of 1692e read as follows:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:"

The only way to interpret these first two sentences of 1692e is that the first sentence, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt", amounts to a violation; and the second sentence, "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section", amounts to a separate violation with the violation being any one of the actions set forth in the 16 separate subparts.  See Boyko v American International Group, et. al., Case No. 08-cv-02214 (District Court, NJ, 2009).  See also Gabriele v. Am. Home Mortg. Servicing, Inc. 503 Fed. Appx. 89 (2nd Cir., 2012) (Summary Order) ("1692e "provides a non-exhaustive list of example violations".).

While twelve out of the sixteen subsections use words such as "false", "representation", and

6

"implication", subsection 14 does not use any of these words (The same holds true for subsections, 5, 8, and 11.).  Subsection 14 does not contain any language or word which evidences any kind of intent or requirement qualifying the clear and explicit meaning of subsection 14 by reading into it a materiality requirement.  As it did in other subsections of 1692e, in subsection 14, Congress could have included the word "false" to have subsection 14 read "The *false* use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.".  It is dispositive that Congress did not include the word false in subsection 14 and subsection 14 actually reads "The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.".

Kevin Z. Shine, PLLC and Kevin Z. Shine on page 19 of their memorandum in support of their own motion to dismiss cite Suiquilanda v. Cohen and Slamowitz, LLP., et. al., 2011 US Dist. Lexis 102727 (S.D.N.Y., September 8, 2011) in support of Defendants' position that 1692e(14) is not a per se violation but requires a "material misrepresentation".

In footnote 13 of its decision the court in Boyko, supra then went on to discuss the following:

> "This conclusion differs markedly from the conclusion in Anthes, wherein the court held that a debt collector can use other names under § 1692e(14) "to the extent that their use is not false, deceptive, or misleading." 765 F. Supp. at 172. The Court believes that this holding is in discord with the structure and language of § 1692e as just examined above."

Plaintiff asks this court to find that the interpretation of 1692e(14) by the court in Suiquilanda, supra also is "in discord with the structure and language of § 1692e" as explained above.

The court in Suiquilanda, supra also did not address the question of the structure and language of 1692e or whether 1692e(14) needs to be interpreted as being a per se violation.  The

court in Suiquilanda, supra certainly did hold that there would be a violation of 1692e(14) if there was deception.  While this is not disputed, it does not follow that that court examined the issue of whether 1692e(14) needs to be interpreted as being a per se violation.   A close reading of Suiquilanda, supra shows that it cited and exclusively relied on two cases in reliance on 1692e(14) requiring a showing of deception, Gutierrez v. At&T Broadband, LLC, 382 F.3d 725 (7th Cir., 2004) and Greco v Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360 (2d Cir., 2005):

> "plaintiff has pled a cognizable violation of section 1692e(l4) if the April 1 Letter can be reasonably read to indicate that the "least sophisticated consumer" would be confused as to what entity was acting to collect plaintiffs 10 Case 1:10-cv-05868-PKC Document 38 Filed 09/08/11 Page 10 of 21debt.S See Greco, 412 F.3d at 363 (explaining that collection notice violations ofthe FDCPA are judged by the "least sophisticated consumer" test); also Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 740 (7th Cir. 2004) ("[T]he FDCPA's focus is not on whether the name used by the creditor is permitted by law, but on whether the name used results in the debtor's deception in terms of what entity is trying to collect his debt.").

However, neither Gutierrez, supra nor Greco, supra dealt with an interpretation of 1692e(14).  Greco, supra  addressed whether a letter from an attorney always misleadingly implied the level of meaningful attorney involvement required under 1692e and 1692e(3).   Greco did not claim a violation of 1692e(14).   In Gutierrez, supra, Gutierrez did claim a violation of 1692e(14) but the court never got to that claim once it held that the defendant in the particular case could not be deemed a debt collector under the FDCPA.   Neither Gutierrez, supra nor Greco, supra can be read as holding that each and every subsection of 1692e requires a showing of material deception.   Based on the above, the court in Suiquilanda, supra seems mistakenly to have relied on the above two cases for its interpretation of 1692e(14), and its interpretation is not supported by the above two cases and contradicted by the structure and language of § 1692e and the rules of statutory interpretation.

**"Material Misrepresentation" Implied or Inherent in the Use of a Name Other than a True Name**

One even could argue that Congress intended or believed that the use of a name other than one's true name was inherently material.  This premises is based on the actual text of 1692e(14) and the failure of 1692(14) to include words such as "false", "representation", and "implication".  See Currier v. First Resolution Inv. Corp., 762 F.3d 529 (6th Cir., 2014).

**1692e (10)**

**The Use of a Name Other than a True Name is "Material"**

As to the question of whether or not the misrepresentation regarding its name is material, several courts have held that it is material; and therefore the question of whether or not 1692e(14) requires it may be irrelevant.  See TOURGEMAN V. COLLINS 2 FINANCIAL SERVS. (9th Cir. 2014); Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 327–28 (6th Cir. 2012); Hartman et al. v. Meridian Financial Services, Inc., U.S. District Court, W.D. Wisconsin, Nos. 01-C-0060-C, 01-C-0061-C, 01-C-0088-C, 01-C-0104-C, 01-C-0254-C, 01-C-0415-C, 01-C-0416-C, 01-C-0424-C; and Boyko v American International Group, et. al., Case No. 08-cv-02214 (District Court, NJ).

Kevin Z. Shine, PLLC and Kevin Z. Shine argue on pages 15-16 of their Memorandum that the case of Klein v. Solomon & Solomon, P. C., 2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011) and Corazzini v. Litton Loan Servicing LLP (N.D. N.Y., 2011), 1:09-cv-199(MAD/ATB), 2011 U.S. Dist. LEXIS 63565 at 7 supports their position that the use of the name CACH of Colorado instead of CACH, LLC cannot be material since it could not have "influenced a consumer's decision or ability to pay or challenge a debt.

Corazzini, supra does not involve the use of a false or non-true name.  It has no useful applicability to the case at bar.

9

Klein, supra does indeed hold as expressed in Kevin Z. Shine, PLLC and Kevin Z. Shine's Memorandum with the penultimate statement and reasoning for the court dismissing the case being as follows:

> "However, plaintiff does not allege that defendants made a representation or statement that impeded his ability to pay or challenge the debt that he had incurred. Accordingly, the motion to dismiss will be granted."

However, based on the case law set forth below, the law in the Second Circuit is that a false representation is "material" if it may mislead a consumer as to the nature or legal status of the debt. Klein, supra did not address the issue of the nature or legal status of the debt; and Klein, supra either has been implicitly overruled by the United States Court of Appeals for the Second Circuit or contradicted already existing case law from the United States Court of Appeals for the Second Circuit.

While Kevin Z. Shine, PLLC and Kevin Z. Shine argue or may argue that Gabriele v. Am. Home Mortg. Servicing, Inc. 503 Fed. Appx. 89 (2nd Cir., 2012) (Summary Order) requires the dismissal of the case at bar, a reading of the portion of the case where the Court of Appeals applies the facts to the law shows Gabriele, supra to be inapplicable to the case at bar.

> "Although statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA, see *Goldman v. Cohen,* 445 F.3d 152, 157 (2d Cir. 2006), the false statements of which Gabriele complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim. Gabriele alleges that Croog prematurely filed two motions for default and a motion for judgment of strict foreclosure, in violation of procedural rules and deadlines set by the court, thereby forcing Gabriele to "expend unnecessary resources" defending against those motions. Second Amend. Compl. ¶ 36. But the FDCPA does not guarantee consumers an efficient or thrifty resolution of their putative debt, nor would the filing of three untimely motions interfere with a consumer's ability to answer and defend himself. *See Walsh,* 2012 WL 4372251, at *5 ("[T]he fact that Walsh was compelled to retain counsel to defend against the debt does not transform defendants' procedural misconduct into material misrepresentations within

the ambit of section 1692e."). Gabriele also alleges that Croog falsely stated that it had forwarded both exhibits to the complaint; submitted an affidavit incorrectly representing that there were no set-offs or counterclaims; filed an unsigned affidavit; and misrepresented that Gabriele was ineligible for a federal loss mitigation program when in fact he was under consideration for such a program in mediation. However, "[t]he hypothetical least sophisticated consumer . . . is neither irrational nor a dolt." *Ellis,* 591 F.3d at 135 (internal quotation marks omitted). These filings, even if false, would not mislead the least sophisticated consumer, particularly represented by counsel, as here, into believing that he had already received an exhibit he had not received, that he had not filed counterclaims that he had filed three months before, or that he was not under consideration for a program he was in mediation to address. "Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Kropelnicki,* 290 F.3d at 128.  Ultimately, Gabriele's allegations are more akin to those in cases such as *Donohue,* 592 F.3d 1027, *Miller,* 561 F.3d 588, and *Walsh,* 2012 WL 4372251, in which the courts determined that the alleged misstatements in court filings amounted to "mere technical falsehoods that misle[d] no one." *Donohue,* 592 F.3d at 1034. Croog's affidavits and motions were not misleading or deceptive as to the nature or legal status of Gabriele's debt, nor would they have prevented the least sophisticated consumer from responding to or disputing the action. Within the context of an adversary proceeding in state court between two represented parties, these allegations simply do not state plausible claims under the FDCPA."

CACH, LLC also claims that "[t]o be "material, "the statement must "influence a consumer's decision or ability to pay or challenge a debt."  CACH, LLC's Memorandum, p. 16.  CACH, LLC then argues that "Plaintiff, in the instant case, cannot plausibly claim that he didn't pay his debt because the difference between the words "CACH, LLC," and "CACH of Colorado, LLC" was enough to deceive him or confuse him."  CACH, LLC's Memorandum, p. 16.

The full breath of Kevin Z. Shine, PLLC and Kevin Z. Shine arguments are as follows:

"Use of the nomenclature "CACH of Colorado. LLC" instead of "CACH', LLC," which is in fact, as alleged by plaintiff himself, is not deceptive or misleading, and does not constitute a basis for a claim of a FDCPA violation, as a matter of law.  First, there can be no confusion or misleading reference because, as plaintiff himself alleges, aside from CACH, LLC, there was no other "CACH" entity, since CACH of Colorado LLC did not

11

exist....Therefore, this is not a case where defendants sought to deceive plaintiff into misdirecting payment to another existing but inappropriate entity.   The only entity entitled to pursue the debt obligation was appropriately, even if not precisely, described – and payment to that entity would have discharged the obligation and satisfied the debt.

The inadvertent use of the prepositional phrase "of Colorado" in the caption of the underlying collection action is not a fraud or harm the FDCPA is intended or required to address."   Kevin Z. Shine, PLLC and Kevin Z. Shine's Memorandum, pp. 8-9.

"Plaintiff does not allege any false representation to the character, amount or legal status of the debt, nor does Plaintiff point to any unfair or unconscionable actions taken to collect the debt. … Plaintiff alleges no facts to show the use of the term "of Colorado" was 'knowingly' done to create a false belief… Plaintiff relies on the inadvertent inclusion of a term that does little more than signify the location of CACH's incorporation."   Kevin Z. Shine, PLLC and Kevin Z. Shine's Memorandum, p. 11.

Based on the above, Kevin Z. Shine, PLLC and Kevin Z. Shine appear to be arguing for the court to dismiss this case on a 12 (c) motion based in part on bona fide error and an alleged lack of liability under the FDCPA for non-intentional acts.

The Second Circuit disposed of the non-strict liability argument in 1996:  "Because the [FDCPA] imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir.1996).  To argue otherwise or assert without any support a superseding change in the law is frivolous.  The 1996 holding has been reiterated by the Second Circuit Court of Appeals and various district courts numerous times.  See Hess v. Cohen & Slamowitz LLP, 637 F.3d at 125; Ellis v. Solomon & Solomon, P.C., 591 F.3d at 135 ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.' "); Zimmerman v. Portfolio Recovery Assocs., LLC, 276 F.R.D. at 177 (" 'The FDCPA is a strict

liability statute. Accordingly, the consumer need not show intentional conduct by the debt collector.' "); Andresakis v. Capital One Bank (USA) N.A., 2011 WL 846830 at *4 ("The FDCPA is a strict liability statute; therefore a defendant's degree of culpability is relevant only with respect to damages."); Ehrich v. I.C. Sys., Inc., 681 F.Supp.2d at 269; Foti v. NCO Fin. Sys., Inc., 424 F.Supp.2d at 661; and Bodur v. Palisades Collection, LLC, 829 F.Supp.2d 246 (S.D.N.Y., 2011).

To establish a bona fide error defense, a debt collector must show "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  Bodur v. Palisades Collection, LLC, 829 F.Supp.2d 246 (S.D.N.Y., 2011).  Judge Bianco of this district explained this defense in more detail in Puglisi v. Debt Recovery Solutions, LLC, 822 F.Supp.2d 218 (E.D.N.Y., 2011):

> "This defense, by its terms, requires defendant to demonstrate by a preponderance of the evidence both: (1) that the violation was unintentional; and (2) that it resulted from a bona fide error notwithstanding procedures reasonably adapted to avoid any such error. *See Pipiles v. Credit Bureau of Lockport,* 886 F.2d 22, 25 (2d Cir.1989). Such a determination is a factual question. *See, e.g., Bank v. Cooper,* No. 08–CV–3936 (JBW), 2009 WL 1491227, at *5 (E.D.N.Y. May 27, 2009) ("Whether the ten dollar overstatement resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error ... is an issue of fact."); *see also DeGeorge v. LTD Fin. Servs., L.P.,* No. 06–CV–178S, 2008 WL 905913, at *5 (W.D.N.Y. Mar. 31, 2008). In addition, a debt collector cannot escape liability under the bona fide error defense due to mistake of law, that is, a violation of FDCPA resulting from a debt collector's incorrect interpretation of the legal requirements of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* —— U.S. ——,130 S.Ct. 1605, 1611–16, 176 L.Ed.2d 519 (2010). Finally, when attempting to show that he is entitled to the bona fide error defense, a debt collector "need not demonstrate that its procedures for avoiding [FDCPA] violations are 'fool proof,' but rather, must only show that its procedures constitute a 'reasonable precaution.' " *Katz v. Asset Acceptance, LLC,* Civil Action No. CV–05–2783 (DGT), 2006 WL 3483921, at *2 (E.D.N.Y. Nov. 30 2006) (citing *Kort v. Diversified Collection Serv. Inc.,* 394 F.3d 530, 539 (7th Cir.2005)); *see also Hyman v. Tate,* 362 F.3d 965, 968 (7th Cir.2004) (affirming the district court's finding that the debt collector's procedures were reasonable, despite the fact that they left open some room for error)."

Kevin Z. Shine, PLLC and Kevin Z. Shine have not set forth in any manner what procedures they had in place to avoid this admitted error.  I cannot imagine how they even would argue that the procedures they had in place to avoid this admitted error were reasonable in light of the fact that it is undisputed that 2,229 lawsuits since 2005 were filed throughout New York State in the name of the same exact false non-existent entity.  They appear never to have caught the error themselves or at least not for almost 9 years after it started.

Perhaps most dispositive is the below proof that this error and the continuation of it at least at some point was intentional.  I personally represented Vincent Gravino in <u>CACH of Colorado, LLC v Gravino</u>, in the City Court of the City of Buffalo, County of Erie under Index No. CV-008776-12/BU.  I filed a motion to vacate a default judgment against Mr. Gravino.  I personally appeared before that court on June 23, 2014 to argue for the motion.  Jason B. Desiderio appeared and argue in opposition on behalf of Kevin Z. Shine, PLLC.  One of the issues in the motion was a fraud on the court as a result of the use of the name CACH of Colorado, LLC.

During oral argument before the court, Jason B. Desiderio told the court that it continued to use the incorrect name and/or to apply for default judgments on behalf of this non-existent entity because the downstate courts in New York required this notwithstanding that the documentation in support of the default judgments clearly showed that an entity other than the named plaintiff had the only right to obtain a default judgment.

Second, attached as Exhibit C, is an Affidavit of Claim submitted by Kevin Z. Shine, PLLC to apply for and obtain the default judgment against Plaintiff in this case in the state court.  This Affidavit of Claim is from "an authorized agent and custodian of record of "**<u>CACH, LLC a/k/a CACH of Colorado, LLC</u>**".  This Affidavit of Claim was prepared by, signed by, approved by,

14

and/or submitted to the court by one or more of the defendants in the case at bar.  I ask this court to take judicial notice of this document under Federal Rules of Evidence 201.  See Effie Film, LLC v. Pomerance, 909 F. Supp. 2d 273 (S.D.N.Y., 2012) ("A court *may* take judicial notice "on its own," Rule 201(c)(1), and *must* take judicial notice "if a party requests it and the court is supplied with the necessary information," Rule 201(c)(2). "The court may take judicial notice at any stage of the proceeding," Rule 201(d), and "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed," Rule 201(e).").

The Second Circuit has ruled that a false representation is "material" if it may mislead a consumer as to the nature or legal status of the debt.  Gabriele v. Am. Home Mortg. Servicing, Inc. 503 Fed. Appx. 89 (2nd Cir., 2012) (Summary Order).  In Gabriele supra, the Second Circuit applied this standard and gave examples of its application:

> "Our case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA. For example, we have held that a debt collector could be liable under the FDCPA for a false statement that a borrower's debt was ineligible for bankruptcy, *see Easterling,* 692 F.3d at 235 … and for falsely representing that the collector had the authority to initiate legal proceedings against the debtor, *see Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2d Cir. 1993). *See also Sykes v. Mel Harris & Assocs., LLC,* 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010) (… defendant law firm engaged in scheme to default debtors through the filing of affidavits falsely attesting that debtors had been served with complaints …"

See also Abramov v IC System, Inc. 14-cv-4000 (ADS)(ARL) (EDNY 2014).

"Legal status of the debt" appears obviously to be a very broad term or concept.  It is undisputed that the FDCPA is a broadly scoped, remedial statute with a main purpose of protecting consumers.  See Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) and Gabriele v. Am. Home Mortg. Servicing, Inc. 503 Fed. Appx. 89 (2nd Cir., 2012) (Summary Order).  See also Serna v. Law Office of Joseph Onwuteaka, P.C., 732 F.3d 440 (5th. Cir., 2013) ("Importantly, "Congress . . . has

legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and *clearly intended the FDCPA to have a broad remedial scope*." *Hamilton v.United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002)").

In light of the broad and remedial purpose of the FDCPA, there can be numerous different types of facts that can determine the "legal status of the debt".  In Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993), the Second Circuit held that falsely representing that the collector had the authority to initiate legal proceedings against the debtor amounted to a "material" misrepresentation.  The false, non-existent entity in the case at bar also had no authority to initiate legal proceedings against the debtor.   Cach of Colo., LLC v Lazarovwsky 2014 NY Slip Op 51759(U) (December 8, 2014, Civil Court Of The City Of New York, Richmond County Straniere, J.).

To prevail on its claim in the state court debt collection lawsuit, the named plaintiff must prove that the "legal status of the debt" is that the named plaintiff has a right to collect on the debt and a legal right to bring the lawsuit.  It cannot be disputed that the name of a plaintiff set forth on a summons and complaint amounts to a statement representing that the named plaintiff has a legal right to bring the lawsuit and a legal right to collect on the debt referred to in the complaint.  If this representation is false, it must follow that the representation may mislead a consumer as to the "legal status of the debt".  This is especially true in debt buyer cases where a debt previously may have changed hands and been assigned several times before a consumer was sued; and the issue of the named plaintiff's right to collect on the debt almost always is a central issue in state court debt collection cases.  It actually is one of the most litigated issues in debt buyer state court collection cases.

As explained and supported by the above cases, in light of the broad and remedial purpose of

16

the FDCPA, "legal status of the debt" should be interpreted broadly; and the naming of a false, non-existent entity as a plaintiff allegedly but falsely entitled to sue a consumer and collect on a debt certainly should be considered as possibly misleading a consumer as to the "legal status of the debt".

In focusing in on the FDCPA's remedial purpose itself, this is a class action where it is undisputed that Defendants brought approximately 3000 cases over a period of several years throughout all of New York State in the name of this admittedly false and non-existent plaintiff. Defendants also incredulously claim that this resulted from an inadvertent error in its forms. The FDCPA certainly was enacted to prevent and/or punish this kind of systematic, widespread, and improper attempt to collect consumer debts and/or a debt collector's reckless disregard for or ignorance of appropriate debt collection practices.

Finally, the Fourth Circuit just summarized the §1692e standard throughout the country: It viewed cases throughout the country and determined that the standard for determining whether a misrepresentation can be viewed as being deceptive or misleading is a relatively low standard. It held in part as follows: "This determination requires an objective inquiry, which involves application of a less demanding standard than that of a "reasonable" consumer. Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1061-62 (9th Cir. 2011)." Kharyn Ramsay *v.* Sawyer Property Management of Maryland, 13-1795 (4th Cir. 2014).

## 1692 (j) (a)

CACH, LLC starting on page 21 of its Memorandum seems to be arguing that Plaintiff's Complaint "does not adequately state a basis for relief" under 1692(j)(a). In the end, based on the below mentioned argument about vicarious liability and control, its real argument seems to be not that Plaintiff has no 1692(j)(a) but that CACH, LLC cannot be held liable.

CACH, LLC does not set forth any case law or any real argument regarding why the facts of

this case do not support a 1692(j)(a) claim. The fact that the one case it does cite gives contains a different fact pattern which resulted in a 1692(j)(a) claim in no manner supports an argument that the facts of this case do not support a 1692(j)(a) claim.

As set forth above, it is black letter law that a court first must look to the plain language of a statute to interpret it and determine its applicability to the case at bar. 1692j (a) provides as follows:

> "It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating."

For the reasons set forth above regarding why the use of the false non-existent name could be materially deceptive, CACH, LLC's attorney, whether alone or with the knowledge or consent of CACH, LLC, clearly **furnished** a form to the court and the consumer each time it filed or served any of the legal documents and the **furnishing** of this form clearly **created** or could have **created the false belief in a consumer**, Plaintiff, **that a person** (the false non-existent entity) **other than the creditor** (Defendant CACH, LLC) **of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating**.

Of course the statute does have two factual issues, the element of "knowing" and the element of "create the false belief". Neither element can be disposed of via a 12 (c) motion.

On page 23 of CACH, LLC's Memorandum, CACH, LLC apparently is arguing that it did not exercise control over its own attorney and therefore cannot be vicariously liable. In 2013, on pages 11-14 of the attached Opinion, Magistrate Gabriel W. Orenstein discussed the different opinions and arguments regarding vicarious liability of a debt collector for the acts of its debt collector attorney. I know of no case on the subject by the Second Circuit Court of Appeals which

18

disposes of this issue, and personally could not lay out the issue and arguments any better than Magistrate Orenstein.   Plaintiff asks the court to adopt Magistrate Orenstein's ultimate holding finding a debt collector vicarious liable for the acts of its debt collector attorney.

If nothing else, the question of the existence of vicarious liability should not be decided on a 12 (c) motion.   See Hallmark v Cohen & Slamowitz, et. al., 1:11-cv-00842-WMS-LGF (WDNY 2014):

> "The different standards urged by the parties, however, merely state alternate theories of liability, actual control and agency principles, for the same claim for relief, i.e., vicarious liability. See Marbury Management, lnc. v. Kohn, 629 F.2d 705,712, n. 4 (2d Cir. 1980) ("Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim."). See a/so Yaccarino v. Motor Coach lndustries, lnc., 2006 WL 3257220, at* 1, n. 2 (E.D.N.Y. Nov. 9, 2006) (noting plaintiff had alleged two different theories of liability, including failure to warn and strict liability, both of which supported same negligence claim for relief, and considering both theories in deciding motion for summary judgment of negligence claim). Further, given the divergent opinions as to the correct standard for determining vicarious liability under the FDCPA, the court is unwilling, at the pleading stage, to determine the correct theory of liability for Plaintiff's FDCPA vicarious liability claim."

Finally, on page 23 of CACH, LLC's Memorandum, CACH, LLC claims that there is "no allegation in plaintiff's complaint that the collection process was ever controlled by CACH as opposed to Kevin Z. Shine's office.", CACH, LLC apparently is relying on the couple of cases which require proof of control over the acts of another in order to be vicariously liable.   Magistrate Orenstein explained the reasons for the inapplicability of the proof of control requirement for a debt collector to be vicarious liable for the acts of its debt collector attorney.   In addition, in paragraph 31 of the Complaint, Plaintiff alleges as follows:

> "Since on or about March 21, 2005, CACH has filed a lawsuit against a consumer in an attempt to collect a debt using CACH of Colorado, LLC as the name of the plaintiff at least 2,229 times."

Is CACH, LLC really attempting to argue that if nothing else it must have had knowledge or worse turned a blind eye to the fact that its attorney was suing consumers, attempting to collect debts from consumer, and obtaining judgments against consumers in the name of a false non-existent entity at least 2,229 times since 2005?  Did it never notice this fact when it or its custodian of records signed affidavits in support of default judgment applications, etc.?  Did it never do an audit of its attorneys since 2005?

This lawsuit was served on CACH, LLC on April 15, 2014.  Since this date, its attorneys have in at least 3 instances continued to litigate cases in the name of this false non-existent entity, argue that the use of this false non-existent entity is not a bar to their legal actions or debt collection attempts, and failed to take any steps to correct the name.   The first is evidence by the aforementioned litigation before Judge Straneri, the second, the case in Buffalo City Court cited above, and third are cases which the undersigned, Mitchell Pashkin, Esq. personally handled the arguments before the court regarding whether or not the use of this false non-existent entity is not a bar to their legal actions or debt collection attempts.  The stipulations attached as Exhibit D prove that no attempt to change the name to the correct name was done even as part of a stipulated settlement.

This knowledge or purposeful/grossly negligent ignorance certainly is enough to find vicarious liability; and the above paragraph of Plaintiff's Complaint alone or in the context of the entire Complaint should be deemed to amount to sufficient allegations of vicarious liability.  If not, Plaintiff requests permission to amend his Complaint as needed.

**1692 (e) (5), 1692e (2)(A), and 1692f**

For the reasons set forth at the beginning of this memorandum, I believe CACH, LLC has waived their right to contest the Complaint in so far as it alleges violations of 1692 (e) (5), 1692e

20

(2)(A), and 1692f.  However, in case this court finds otherwise, I will address the sufficiency of the allegations regarding the violations of 1692 (e) (5), 1692e (2)(A), and 1692f.

**1692 (e) (5)**

As explained below, this subsection is violated when a debt collector takes legal action which it had no legal right to take. Defendants actually are legally barred via the doctrine of collateral estoppel from litigating in this action whether or not they had a legal right to take any action to collect this debt.  In the underlying collection action in the New York City Civil Court, Richmond County, Defendants Kevin Z Shine and Kevin Z Shine PLLC on behalf of Defendant CACH, LLC opposed Mr. Lazarofsky's motion to vacate the default judgment and dismiss the case based on suing in the name of the false non-existent entity.  As part of this motion, all defendants in this action had a full and fair opportunity to litigate Defendants' legal right to sue in the name of the false non-existent entity.  This included both the submission of opposition papers and oral argument before Judge Straneri.  The opposition papers as well as Judge Straneri's decision are annexed as exhibits E and F respectively.

To determine whether claim preclusion applies to preclude later litigation, a court must find that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001).  "A judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment." Dillard v. Henderson, 43 F. Supp. 2d 367, 369 (S.D.N.Y. 1999).

As a result of the above motion practice and decision, Defendants are barred by res

judicata/claim preclusion from litigating whether or not Defendants had a legal right to take any action to collect this debt in the name of the false non-existent entity.  See also Cahill v. Arthur Anderson & Co., 659 F. Supp. 1115, 1120 (S.D.N.Y. 1986), aff'd, 822 F.2d 14 (2d Cir. 1987) (citing Nemaizer v. Baker, 793 F.2d 58, 64 (2d Cir. 1986) and Smith v. Alleghany Corp., 394 F.2d 381, 391 (2d Cir. 1968)).

Even if they are not barred, Judge Straneri clearly laid out in his decision the reason why Defendants had no legal right to sue in the name of the false non-existent entity.

In addition or as a supplement to Judge Straneri's decision, if an entity is a foreign corporation or LLC and does business in New York, it cannot be a Plaintiff in a New York court action unless it obtains authorization to do business in New York as required by the New York Business Corporation Law or Limited Liability Corporation Law.  MKC-S, Inc. v Laura Realty Co. 2014 NY Slip Op 50650(U); Scaffold-Russ Dilworth, Ltd. v Shared Management Group, Ltd. 256 AD2d 1087 (4th Dept 1998); and Parkwood Furniture Co. v OK Furniture Co., 76 AD2d 905, 905 (2d Dept 1980).  If it has not obtained authorization to do business in New York at the time it files the lawsuit, a court has no subject matter jurisdiction to entertain the lawsuit. Cach of Colo., LLC v Lazarovwsky 2014 NY Slip Op 51759(U) (December 8, 2014, Civil Court Of The City Of New York, Richmond County Straniere, J.); Centurion Capital Corp. v Guarino, 38 Misc 3d 1216(A) (2012); and Morrison v. Budget Rent A Car Systems, Inc., 657 N.Y.S.2d 721, 230 A.D.2d 253 (N.Y.A.D. 2 Dept., 1997).  This is regardless of whether or not Defendant defaulted in answering the lawsuit or any prior activity in this case.  Morrison supra; Jordan v Metropolitan Jewish Hospice 2014 NY Slip Op 07630 (2d Dept. 2014); and Midland Funding, LLC d/b/a in New York as Midland Funding of Delaware, LLC, supra.  A consumer's actions or inactions cannot give an entity a legal right to use the New York state courts which legal right it

did not possess pursuant to New York LLCL§ 802 § 808 when it started this case.  If a court has

no power or legal right to entertain a lawsuit or proceeding pursuant to New York LLCL§ 802 §

808, a consumer's actions or inactions cannot bestow the power which it would not otherwise

possess under the law.  See Morrison, supra.  There are indeed cases which hold that the lack of

authority to do business can be cured after the commencement of a lawsuit to avoid dismissal.

However, these cases all involve a foreign LLC which actually existed in a state outside of New

York but just had not yet filed for authority to do business in New York.  However, if Midland

Funding, LLC DBA in New York as Midland Funding of Delaware, LLC does not/cannot have

any legal existence then it has no ability to obtain authorization to do business in New York and

there is no ability to cure the defect.   Morrison v. Budget Rent A Car Systems, Inc., 657

N.Y.S.2d 721, 230 A.D.2d 253 (N.Y.A.D. 2 Dept., 1997); Cach of Colo., LLC v Lazarovwsky;

and Centurion Capital Corp. v Guarino, 38 Misc 3d 1216(A) (2012).  Finally, "[t]he error in

commencing this action in the name of a non-existent entity is not a ministerial error capable of

correction. No such entity ever existed, so it could not validly commence this litigation."  Cach

of Colo., LLC v Lazarovwsky.  If this litigation is void, it is incapable of being corrected.  Cach

of Colo., LLC v Lazarovwsky.

### DOES 1692 (e) (5) COVER ACTIONS TAKEN AS WELL AS THREATS? YES.

The federal district courts throughout the nation differ on whether or not 1692e (5) is

violated as a result of illegal action that actually has occurred or is violated only when an illegal

action is threatened but has not yet been carried out by the debt collector.  I have argued above in

favor of certain rules of statutory construction; and I will not contradict myself by arguing

differently in regard to the above question as to what constitutes a violation of 1692e(5).

23

However, the Sixth Circuit Court of Appeals explained why, based on the meaning or meanings of "threat" in 1692e(5) as interpreted based on the rules governing statutory interpretation and in line with the purpose of the FDCPA, the actual taking of an illegal action violates 1692e(5).

In fact, this Sixth Circuit Court of Appeals opinion specifically states that court filings and the filing of a complaint constitute a violation of 1692e(5); and therefore, if this court agrees with the Sixth Circuit Court of Appeals, its decision is directly on point.

Based on all of the above and in the absence of a governing opinion from the Second Circuit Court of Appeals, I ask this court to adopt the reasoning of the below quoted portion of the Sixth Circuit Court of Appeals decision in Currier v. First Resolution Inv. Corp., 762 F.3d 529 (6th Cir., 2014):

> "The alleged conduct of filing and maintaining an invalid lien for a month can also fairly be characterized as a threat to take an action that cannot legally be taken within the meaning of § 1692e(5). Court filings can be a threat under the FDCPA. *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28-29, 30 (6th Cir. 2007); *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-32 (4th Cir. 2007) (holding that the FDCPA applies to interrogatories and motions for summary judgment); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472-73 (7th Cir. 2000) (holding that the FDCPA applies to a complaint). The fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA. *See Gionis*, 238 F. App'x at 29-30. Nor does it matter that the filing is also an "action" because "'attempts' and 'threats' are not necessarily mutually exclusive concepts." *Id*. at 28-29. In light of the Act's overarching purpose to prevent false, deceptive, or misleading representations, whether a filing's "metaphysical description is more an 'attempt' [to collect a debt] or more a 'threat' is essentially wordplay. No semantical recasting alters the intimidating effect on the least sophisticated consumer: that she would be confused, and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity" in order to avoid the implied consequences of the lien. *Id*. at 29 (internal quotation marks omitted). "This is so because even if the least sophisticated consumer," or indeed *any* consumer, "would view [the lien] as an actual 'attempt' to collect [the debt], the attempts would nonetheless embody an ongoing threat" that First Resolution would force the sale of her home or refuse to voluntarily release the lien. *Id*.; *see also*

24

> Ky. Rev. Stat. Ann. §§ 426.010, 426.290 (giving debt collector who holds a judgment lien a right to force the sale of underlying property). Currier plausibly alleged a claim under § 1692e(5)."

The Fifth Circuit Court of Appeals also has held that actual action amounts to a violation of 1692e(5); and in fact held so in a case also involving the improper filing of a lawsuit.  In Poirier v. Alco Collections, Inc., 107 F.3d 347, 350-51 (5th Cir.1997), the Fifth Circuit held as follows:

> "As the Louisiana courts have found Alco's actions in filing suit against Poirier constituted the unauthorized practice of law, there is no longer any dispute that Alco violated § 1692e(5) of the FDCPA when it took "action that cannot legally be taken" against Poirier. As such, Poirier has a valid FDCPA action. Alco and Allen are liable to Poirier for civil damages under § 1692k(a)."

See also Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C., 1997 WL 171011 (S.D.N.Y. Apr. 10, 1997) (Collection attorney's act of freezing consumer's bank account on the basis of a judgment that had been vacated, and the misrepresentation to the consumer's bank when the bank investigated the existence of a judgment, clearly brought debtor's claim within the FDCPA.  Collector's motion to dismiss was denied.); Merchant v. U.S. Collections West, Inc., 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998) (court rejects defendants' argument that e(5) prohibits only the "threat" to take illegal action, where the defendants only took the illegal action, stating that the argument elevates form over substance and noting that the introductory portion of 1692e bars the "use" of prohibited means); and Sprinkle v. SB &C Ltd., 472 F.Supp.2d 1235, 1247 (W.D.Wash.2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so.... The opposite conclusion would be akin to attaching liability to one who merely threatens a tortious act while absolving one who unabashedly completes it.").

**1692e (2)(A)**

1692e (2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt".

For the reasons explained above in the section of this Memorandum entitled "The Use of a Name Other than a True Name is "Material" starting on page _____, Plaintiff has alleged a violation of 1692e (2)(A).

**1692f**

1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.".

In Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 522 (S.D.N.Y., 2013), the court conducted an analysis of 1692f and explained and held as follows:

> "Thus, we conclude that Okyere is entitled to proceed under section 1692f's catchall provision as long as he can show that the practices at issue were "unfair" or "unconscionable.
>
> Turning to this question, 1692f was enacted specifically "to catch conduct not otherwise covered by the FDCPA," because Congress was "[c]ognizant that it could not anticipate every improper practice used by debt collectors." *Johnson v. BAC Home Loans Servicing, LP,* 867 F.Supp.2d 766, 781–82 (E.D.N.C.2011) (citing S.Rep. No. 95–382, at 4 (Aug. 2, 1977), 1977 U.S.C.C.A.N. 1695, 1698), *reconsideration denied,*2012 WL 148688 (E.D.N.C. Jan. 18, 2012); *accord Hoover v. Monarch Recovery Mgmt., Inc.,* 888 F.Supp.2d 589, 601 (E.D.Pa.2012) (" § 1692f operates as a catchall for conduct that is recognizably unfair, but not explicitly enumerated in other sections of the FDCPA") (internal citations omitted); *Osborn,* 821 F.Supp.2d at 878 (internal citation and quotation marks omitted) (specifically acknowledging section 1692f's role in providing a cause of action for "those unfair practices which somehow manage to slip by §§ 1692d & 1692e").
> "[T]he Eleventh Circuit has noted: The plain meaning of "unfair" is "marked by injustice, partiality, or deception." Significantly, in Jeter, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair . . . if it has the tendency or capacity to deceive." Jeter [v. Credit Bureau Inc., 760 F.2d 1168, 1172 (11th Cir. 1985)]." …

"Under the facts alleged here, the Court believes that a jury might reasonably conclude that (1) removing money from a bank account when a court has forbidden this to occur and (2) deliberately refusing for many months to return money seized from a bank account where a court has ordered it returned "forthwith" constitute acts that affront the sense of "justice, decency or reasonableness." Indeed, courts have applied 1692f to conduct similar to what defendants did here: for example, filing an application for a writ of garnishment when the plaintiff did not owe any money, *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1517 (9th Cir.1994); garnishing a bank account with the knowledge that it contained exempt funds, *Bray v. Cadle Co.,* 2010 WL 4053794, at *15 (S.D.Tex.2010); *Hogue v. Palisades Collection, LLC,* 494 F.Supp.2d 1043, 1051 (S.D.Iowa 2007); *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.,* 348 F.Supp.2d 903, 915 (S.D.Ohio 2004), *aff'd,* 434 F.3d 432 (6th Cir.), *cert. denied,* 549 U.S. 886, 127 S.Ct. 261, 166 L.Ed.2d 151 (2006); and drawing money from a consumer's bank account without authorization, *Lovelace v. Stephens & Michaels Assocs., Inc.,* 2007 WL 3333019, at *4–5 (E.D.Mich.2007)."

Plaintiff asks this court to find in the case at bar that it is or a jury reasonably could find that it is unfair, unjust, deceptive and/or unconscionable for a debt collection law firm and a debt buyer debt collector such as Defendants to file a lawsuit against a consumer in the name of a false non-existent entity thereby representing to the consumer, the court and others that a false non-existent entity has a right to file a lawsuit against the consumer and attempt to collect a debt against that consumer on behalf of a false non-existent entity. A jury reasonably could find that it is unfair, unjust, deceptive and/or unconscionable to make a consumer go through the stress and worry of being sued, and to make a consumer go to court and spend time and money to defend against a lawsuit which there was no legal right to file and to defend against an attorney and a debt buyer attempting to collect a debt on behalf of a false non-existent entity. These actions are no different that the aforementioned examples of 1692f violations set forth above.

**INDIVIDUAL LIABILITY OF KEVIN Z. SHINE**

Starting on page 20 of their Memorandum, Kevin Z. Shine, PLLC and Kevin Z. Shine argue that Kevin Z. Shine is not individually liable for any of the acts of Kevin Z. Shine, PLLC for the

following reasons:

a)      There litigation at issue still is pending before a state court and his activities are and should be subject only to that court; (b) Mr. Shine is an officer and employee of Kevin Z. Shine, PLLC; and Plaintiff cannot pierce the corporate veil of Kevin Z. Shine, PLLC, (c) "Mr. Shine's litigation pleadings are not subject to the FDCPA, and (d) the FDCPA is not applicable when consumers already are protected by the court system as in the case of Plaintiff.

As set forth in the decision of Judge Straniere in <u>Cach of Colo., LLC v Lazarovwsky</u> 2014 NY Slip Op 51759(U) (December 8, 2014, Civil Court Of The City Of New York, Richmond County Straniere, J.), the state court action was dismissed.  It was dismissed well before Defendants filed their motion and made this unsupportable frivolous argument.

Piercing of the corporate veil is not required to hold Kevin Z. Shine personally liable in this case.  Paragraph 15 of the Complaint alleges as follows:

> "Upon information and belief, Kevin Z. Shine is a member of Kevin Z. Shine, PLLC, a main financial beneficiary of Kevin Z. Shine, PLLC, holds himself out as a member of Kevin Z. Shine, PLLC, and/or controls and/or supervises the debt collection activities of Kevin Z. Shine, PLLC.

It is hard to imagine that Kevin Z. Shine does not control and/or supervises the debt collection activities of Kevin Z. Shine, PLLC. Mr. Shine does not address the issue of his control or supervision or address any of these allegations but simply describes himself as an officer and employee of Kevin Z. Shine, PLLC.  For all the reasons stated above as to CACH, LLC's vicarious liability, Mr. Shine either is vicariously liable or this issue cannot be decided in the context of a 12 (c) motion as explained above.

In addition to the above discussion about CACH, LLC's liability see F.T.C. v. Check Investors, Inc., 502 F.3d 159 (3rd Cir., 2007).  See also Tito Pollice v. Nat'l Tax Funding, 225 F.3d 379 (3rd Cir., 2000):

"Thus, we consider the case on that basis and conclude that the general partner of a "debt collector" limited partnership may be held vicariously liable for the partnership's conduct under the FDCPA. In light of the general partner's role in managing the affairs of the partnership, we see no reason why the general partner should not be responsible for conduct of the partnership which violates the FDCPA. Liability for the general partner is particularly appropriate under the facts of this case--NTF has no employees, app. at 514, and accordingly we presume that its actions are taken through the personnel of CAH. Indeed, an officer of CAH executed the Purchase Agreements on behalf of NTF, as well as the Servicing Agreements on behalf of CARC. See app. at 540, 874, 906, 1113. Accordingly, we conclude that CAH may be held liable for any conduct of NTF and CARC which violated the FDCPA. …

The Court of Appeals for the Seventh Circuit has stated as follows regarding the liability of shareholders and employees of "debt collector" corporations: Because such individuals do not become `debt collectors' simply by working for or owning stock in debt collection companies, we held [in a prior decision] that the [FDCPA] does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced . . . . Individuals who do not otherwise meet the statutory definition of `debt collector' cannot be held liable under the Act . . . . FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions. Pettit, 211 F.3d at 1059 (citations omitted). Here, we do not deal with the liability of a shareholder of a "debt collector" corporation, nor do we deal with the liability of a person who merely works for a "debt collector" company. Rather, we deal with the liability of the general partner where the limited partnership meets the definition of "debt collector." We believe that a general partner exercising control over the affairs of such a partnership may be held liable under the FDCPA for the acts of the partnership. See Miller, 214 F.3d at 876."

29

Finally, below is the FDCPA's definition of debt collector which contain specific exclusions; and an attorney who is an officer or employee of a law firm named after himself is not among those excluded.

"(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6), such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include --

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained

30

by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."

As to the last two arguments about Mr. Shine's individual liability, statements made and actions taken in lawsuits are not, in and of themselves, exempt from FDCPA liability.  See Goldman v. Cohen, 445 F.3d 152, 157 (2d Cir. 2006); Gabriele v. Am. Home Mortg. Servicing, Inc., 503 Fed. Appx. 89, 94 (2d Cir. 2012) (Summary Order).  There may not be a better example of the fact that a court cannot and does always protect consumers.  In the case at bar, it is undisputed that 2,229 lawsuits since 2005 were filed throughout New York State in the name of a false non-existent entity. Before my co-counsel Mr. Langel discovered this issue while defending Plaintiff, I am unaware of any court that caught or addressed this issue.  Also, the courts cannot protect a consumer from a false or misleading lawsuit when a consumer is first served and the court has not had the occasion or need to get involved.  Courts are not reviewing lawsuits for issue such as these merely upon them being filed in the court to start the case  See Okyere v. Palisades Collection, LLC (S.D.N.Y., 2013).  See also Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 236 (4th Cir. 2007).

**GBL 349**

Defendants correctly asserts that "[t]o bring a claim under GBL, Section 349, the plaintiff must allege facts that demonstrate: (1) the act or practice was consumer oriented; (2) the act or practice was misleading in a material respect; and (3) that plaintiff was injured as a result."

SUFFICIENT ALLEGATIONS

Plaintiff's allegations regarding Defendants' violation of GBL 349 are set forth in the Third Cause of Action as follows:

"37.  Lazarovsky realleges paragraphs 1-33 of this Complaint.
38.  Lazarovsky is a consumer.
39.  Through their attempts to collect a debt from Lazarovsky via written, telephonic and electronic communications and/or a lawsuit on behalf of

and/or using the name of the non-existent entity, CACH of Colorado, LLC Defendants misrepresented to Lazarovsky that he owed a debt to the non-existent entity, CACH of Colorado, LLC and/or that the non-existent entity, CACH of Colorado, LLC had a legal right to collect a debt from him.

40. The above misrepresentations deceived Lazarovsky into believing that he had or may have an obligation to paying a debt to a non-existent entity.

41. As a result of the above, Defendants are liable to Lazarovsky under General Business Law section 349."

Then in the "wherefore clause", Plaintiff prays for in part "statutory and actual damages along with costs and attorney's fees for each of the violations of General Business Law 349".

In 2005 in Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508 (2nd Cir., 2005), the United States Court of Appeals for the Second Circuit explained the sufficiency of a cause of action alleging a GBL 349 violation:

> Unlike a private action brought under § 350, a private action brought under § 349 does not require proof of actual reliance. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).[4] Additionally, because § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, *see Gaidon*, 94 N.Y.2d at 343, 704 N.Y.S.2d 177, 725 N.E.2d 598, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed.R.Civ.P., *see generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Although the district court recognized that § 349 does not require proof of reliance, the district court nonetheless dismissed the claims under § 349 because it concluded that "[p]laintiffs have failed, however, to draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." *Pelman II*, 2003 U.S. Dist. LEXIS 15202, at * 30. … This, however, is the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a), Fed.R.Civ.P.  As a unanimous Supreme Court stated in *Swierkiewicz:*  This simplified notice pleading standard [of Rule 8(a)] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that

attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."

SUFFICIENT ALLEGATIONS- THE ACT OR PRACTICE WAS CONSUMER ORIENTED

Through the above allegations, the allegations from paragraphs 1-33 incorporated into this cause of action, and the wherefore clause, Plaintiff certainly has plead that Plaintiff is a consumer and how the pleaded improper and illegal actions related to an attempt to collect a consumer debt. The Third Cause of Action alleging a violation of GBL 349 is designated as a class claim in this proposed class action.  In paragraph 31 of the Complaint, incorporated by reference into the Third Cause of Action alleging a violation of GBL 349, Plaintiff alleges as follows:

"Since on or about March 21, 2005, CACH has filed a lawsuit against a consumer in an attempt to collect a debt using CACH of Colorado, LLC as the name of the plaintiff at least 2,229 times."

This allegation amounts to an allegation that Defendants have committed the same exact illegal, improper and deceptive acts in violation of GBL 349 to at least 2,229 consumers since 2005; and therefore, Plaintiff has alleged that the illegal, improper and deceptive acts were consumer oriented. This is exactly what Judge Straneri held in his decision in the state court case between Plaintiff and CACH, LLC where CACH, LLC were presented by the other Defendants in this case:

"If this practice is as widespread as it appears, it could constitute as deceptive business practice under New York's General Business Law §349 entitling an injured debtor to recourse under that law and perhaps the intervention of the New York Attorney General." Cach of Colo., LLC v Lazarovwsky 2014 NY Slip Op 51759(U) (December 8, 2014, Civil Court Of The City Of New York, Richmond County Straniere, J.)

Defendants do not deny that Plaintiff is a consumer or that the pleaded improper and illegal actions related to an attempt to collect a consumer debt.  In the FRCP 12 (c) motion, Defendants do not claim that the 2,229 lawsuits since 2005 were filed against anyone other than consumers or

related to the collection of debts other than consumer debts.  If the lawsuit against Plaintiff were a one-off or part of a small batch of similar lawsuits, then the class action claim regarding violations of GBL 349 may not be consumer oriented as required to sustain a violation of GBL 349.  However, by virtue of the incorporation of the allegation of 2,229 identical lawsuits since 2005 and the designation of the Third Cause of Action as a class claim, the Third Cause of Action does not allege that Defendants violated GBL 349 just as to Plaintiff but alleges that Defendants violated GBL 349 in regard to at least 2,229 consumers.

The standard for sufficiently alleging the "consumer oriented" element of a GBL 349 claim is set forth in Schwartzco Enters. LLC v. TMH Mgmt., LLC 14-CV-1082 (ADS)(GRB) (E.D.N.Y., 2014):

> "The consumer-oriented element of a N.Y. GBL § 349 claim "'has been construed liberally.'" Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013)(quoting New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002)). "Consumer-oriented" has been defined in this Circuit as "conduct that potentially affects similarly situated consumers." SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996) (internal citation and quotation marks omitted). As the New York Court of Appeals has stated, "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).  Instead, the critical question is whether "the acts or practices have a broad[ ] impact on consumers at large." Id.; see e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51-53 (2d Cir. 1992)(following an appeal from a jury verdict, holding that the plaintiffs satisfied the "consumer-oriented" element of a N.Y. GBL § 349 claim against an insurance company by presenting evidence that the insurance company had engaged in similar practices against other policyholders). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." Feldman, 210 F. Supp. 2d at 301 (collecting cases).  That said, "[f]or a claim to classify as 'consumer-oriented,' a plaintiff must plead and prove injury to the public generally, rather than to himself alone." Newman v. Mor, No. 08CV658 (RJD)(CLP), 2009 WL 890552, at *5 (E.D.N.Y. Mar. 31, 2009). "'Single shot transactions' or '[p]rivate contract disputes, unique to the parties' are not

governed by section 349." Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427 (NGG)(RML), 2014 WL 4773991, at *7 (E.D.N.Y. Sept. 24, 2014)(citations omitted); see also MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582, 586 (E.D.N.Y. 1997)("[T]he injury must be to the public generally as distinguished from the plaintiff alone.")."

Based on the above, Plaintiff has more than sufficiently pleaded the "consumer oriented" element of a GBL 349 claim.  See also Sykes v. Mel Harris And Assocs. LLC 757 F.Supp.2d 413 (2010) (a proposed class action regarding the improper obtaining of default judgments due to fraudulent affidavits of service was consumer oriented.).

### SUFFICIENT ALLEGATIONS- THE ACT OR PRACTICE WAS MISLEADING IN A MATERIAL RESPECT

Paragraph 39 of the Third cause of Action alleges in part that "misrepresented to Lazarovsky that he owed a debt to the non-existent entity, CACH of Colorado, LLC and/or that the non-existent entity, CACH of Colorado, LLC had a legal right to collect a debt from him."  This certainly is an allegation of a misleading act.  As explained above in regarding to the materiality element of 1692e (10), the portion of paragraph 39 which alleges that Defendants "misrepresented….that the non-existent entity, CACH of Colorado, LLC had a legal right to collect a debt from him" is "material".  Per the standard set forth in Pelman ex rel. Pelman, Plaintiff has sufficiently pleaded this element of a GBL 349 claim.

### SUFFICIENT ALLEGATIONS- PLAINTIFF WAS INJURED AS A RESULT

In the "wherefore clause", Plaintiff prays for in part "statutory and actual damages along with costs and attorney's fees for each of the violations of General Business Law 349".  The Complaint clearly alleges that Defendants filed a lawsuit against Plaintiff when they had no legal right to file the particular lawsuit based on the false non-existent plaintiff name.  In Ovitz v. Bloomberg L.P., 909 N.Y.S.2d 710, 77 A.D.3d 515 (N.Y. App. Div., 2010), the court held that

plaintiff did not "allege actual injury resulting from the alleged deceptive practices, since defendants did not commence enforcement proceedings against plaintiff and are not seeking to collect fees or payments from plaintiff in connection with the cancellation of his subscription").   The opposite clearly is true in the case at bar since the main alleged violation is the improper commencement of a legal proceeding to attempt to collect a debt.

Also, it is well recognized by the steps taken and laws passed by state and federal governments that consumers such as Plaintiff are actually injured by illegal debt collection tactics such as the one at issue.  This is evidenced by among other things the statutory and actual damages, such as emotional distress damages, awarded under the FDCPA.  Under GBL 349, the required actual harm does not have to be pecuniary to impose compensatory damages.  Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25-26 (1995).


Dated:          February 9, 2015


/s/_____
Mitchell L. Pashkin, Esq. (MP-9016)
Attorney For Plaintiff
775 Park Avenue, Ste. 255
Huntington, NY  11743
(631) 335-1107


/s/_____
Jesse Langel, Esq. (JL-7079)
The Langel Firm
Attorney For Plaintiff
225 Broadway, Suite 700, New York, NY 10007
(646) 290-5600