# Cach of Colo., LLC v Lazarovwsky

**Annotate this Case**

[*1] Cach of Colo., LLC v Lazarovwsky 2014 NY Slip Op 51759(U) Decided on December 8, 2014 Civil Court Of The City Of New York, Richmond County Straniere, J. Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 8, 2014
Civil Court of the City of New York, Richmond County

Cach of Colorado, LLC, Plaintiff Against

against

Stanislav Lazarovwsky, Defendant.


001890/13


Kevin Z. Shine

Jason B. Desiderio

The Law Office of Kevin Z. Shine, PLLC

5965 Transit Road, Suite 500

East Amherst, NY 14051

Attorney for Plaintiff

Jesse Langel

The Langel Firm

225 Broadway, Suite 700

New York, NY 10007

Attorney for Defendant

Philip S. Straniere, J.

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this:

MOTION TO AMEND AND CROSS-MOTION TO DISMISS SUBMITTED 10/27/14

Papers

Numbered

Notice of Motion and Affidavits Annexed . .1

Notice of Cross Motion and Opposition .....2

Affirmation in Opposition to Cross-Motion ...3

\

"Even a broken clock is right twice a day."

(Idiom of unknown origin).

"The slotted spoon can catch the potato."

(Jack's Mother from Stephen Sondheim's "Into the Woods.")

"Bills sometimes more difficult to collect than murder clues."

(Charlie Chan from "Charlie Chan in Honolulu").

"Easy to criticize. More difficult to correct."

(Charlie Chan from "Charlie Chan at the Race Track").

"Perfect case like perfect doughnut. Has hole."

(Charlie Chan from "Charlie Chan in Paris").

In dealing with litigation involving consumer credit actions brought by third- party debt buyers such as in this case, these and many other quotes are often apropos.

Plaintiff, CACH of Colorado, LLC, commenced this civil action, against the defendant, Stanislav Lazarovsky, alleging that the defendant failed pay a consumer

credit account as a agreed. Defendant initially failed to appear or answer and a default judgment in the amount of $2,357.32 was entered against the defendant in Civil Court, Richmond County, on June 11, 2013. Plaintiff is represented by counsel.

In February 2014, defendant filed a self-represented order to show cause to vacate his default and set aside the judgment. The order to show cause included a proposed answer. Plaintiff submitted written opposition to that motion. The court granted that application and the case was restored to the court calendar for disposition on the merits. Defendant, now represented by counsel, filed a new answer in which defendant questioned the standing of the plaintiff to commence this action alleging that there is no legal entity known as CACH of Colorado, LLC.

Currently before the court is plaintiffs motion to amend plaintiffs complaint to reflect what it alleges is the correct name of the plaintiff, CACH, LLC. It admits there is no entity with the name of the plaintiff. Defendant has opposed that application and has cross-moved to dismiss plaintiffs complaint on the ground that no such legal entity exists with the name of plaintiff, CACH of Colorado, LLC and therefore the named plaintiff lacks both the standing and capacity to sue. Both sides are represented by counsel. Plaintiff submitted opposition to defendant's cross-motion.

Background:

Plaintiff, CACH of Colorado, LLC commenced this action by filing a copy of the summons [*2]and complaint with the clerk of the court on March 28, 2013. The complaint alleged that plaintiffs address was "4340 S. Monaco, 2nd Fl., Denver, Colorado" and it has a New York City Department of Consumer Affairs License Number of "1253378." The complaint further alleged that the "plaintiff is a Colorado limited liability company" which purchased the account from Citibank, South Dakota, NA.

In the current motion, plaintiff has asserted that the caption and information in the summons and complaint is incorrect and that CACH, LLC, is the actual owner of the debt. That application goes on to provide other information not alleged in the complaint to the effect that the account was really a "Sears MasterCard" issued by Citibank.

It should be noted that it is a common occurrence in litigation brought by third-party debt buyer plaintiffs seeking to collect on what a consumer believes is a "store" credit card (in this case Sears). The third-party debt buyer, such as the plaintiff herein, recites in the complaint, that the defendant owes the debt to the bank which underwrote the store credit card. This is done rather than specifically naming the store with whom the debtor dealt as the issuer of the credit card through the bank. The information that the original debt was incurred on a Sears

credit card is provided by plaintiff in this motion. It is not specified in the complaint.

Such a practice is confusing to unsophisticated card holders and may be a factor in debtors defaulting in appearing or answering when served with complaints only indicating the underwriting bank, rather than the name of the issuing store with which the consumer believed he or she was dealing. This occurs with such frequency in the complaints issued by third-party debt buyer plaintiffs in consumer credit litigation that the court is beginning to question whether this is a deliberate industry-wide adopted practice so as to cause more default judgments to be entered because the debtor legitimately does not recognize the original creditor. And why should they if, like here, the store's name is not set forth in the complaint, and if the billings come from the store and are made to the store. If this practice is as widespread as it appears, it could constitute as deceptive business practice under New York's General Business Law §349 entitling an injured debtor to recourse under that law and perhaps the intervention of the New York Attorney General.

A search of New York State, Division of Corporations records discloses that there is an entity registered as a foreign limited liability company, from Colorado known as CACH, LLC and another known as CACV of Colorado, LLC. Interestingly, both were registered in New York State on October 18, 2006. A search of the Colorado, Secretary of State records shows both entities as being "active" in Colorado. CACV was formed in 2002 and CACH in 2005. Both have as their Colorado address, 4340 S. Monaco Street, Denver, Colorado. There is no entity in either New York [*3]or Colorado with the name of the plaintiff. A foreign limited liability company must apply for authority to do business in New York [Limited Liability Company Law (LLCL§ 802)]. The failure to register precludes a foreign limited liability company from maintaing any action, suit or special proceeding [LLCL§808].

It is easy to see how counsel for plaintiff or whoever provided the initial information to counsel, could have made a mistake and somehow combined the two names to form an entity known as CACH of Colorado, the plaintiff herein. After all, is not the plaintiffs name close? Unlike horseshoes and hand grenades, in litigation, "close" is not enough. The failure to be registered with the New York Secretary of State, prevents an out-of-state entity from using the court system to collect debts [Centurion Capital Corp. v Guarino, 38 Misc 3d 1216(A) (2012)].

In an effort to establish the ownership of this account by CACH, LLC, the entity plaintiff now asserts is the owner of the debt, plaintiff has attached documentation of the history of the debt, the litigation leading up to the entry of the default judgment, the application for entry of the default judgment and other exhibits with the motion papers. Analysis of the copies of the following documents which have been submitted by plaintiff leads to the conclusion that this error in the plaintiffs name is not a mere "scrivener's error" and in fact, the entire litigation is fraught with errors.

Documents Before the Court.

1. Affidavit of Sale of Account by Original Creditor.

This document is issued by "Patricia Hall" as the "Financial Account Manager of Citibank, NA." In it Hall asserts that on February 21, 2012 Citibank sold a "pool of charged-off accounts by a Purchase and Sale Agreement and Bill of Sale to CACH, LLC." This was accomplished by the electronic transfer of records in regard to individual accounts.

There are a few problems with this document. First, the complaint alleges that the issuer of the credit card was Citibank South Dakota, NA, which may or may not be the same legal entity as Citibank, NA mentioned in the Hall affidavit. There is no indication of an assignment of the debt from Citibank South Dakota to Citibank. Second, there is no copy of any printout listing the accounts included in that bill of

sale, so it is impossible to conclude that defendant's account was sold as part of that transaction. As previously noted, the complaint does not recite that the debt was incurred on a Sears MasterCard. This fact also is not recited in the document signed by Hall.

Submitted as an exhibit with plaintiffs motion is an affidavit from "Shelley Baker" dated [*4]October 24, 2012, indicating that she is an employee of Citibank, NA and that Citibank South Dakota, NA merged into Citibank in July 2011. The affidavit indicates that the defendant's account was sold in February 2012 to CACH, LLC. There is no documentation to establish the merger of the two Citibank entities such as an acknowledgment from a governmental agency which either had to approve or supervise such an event. There is no proof of the transfer of the account from Citibank to CACH, LLC, nor is there any evidence that Citibank issued the Sears account.

If this information is accurate, then if the merger occurred in July 2011 and Citibank South Dakota ceased to exist as of that date, why does plaintiffs complaint issued in March 2013, almost two years after the alleged merger state that Citibank South Dakota sold the debt either to the plaintiff or CACH, LLC, when it was neither the owner of the debt or a viable entity at that time?

Additionally, the Baker affidavit was signed in Missouri and notarized there. Under New York law it needed a certificate of conformity [Civil Practice Law and Rules (CPLR) §2309]; Chase Bank USA, NA v Cardello, 27 Misc 3d 791 (2010)]. None is attached to the Baker affidavit. The court is therefore permitted to reject the document.

2. Affidavit of Claim to Obtain Default Judgment.

This document bears the caption of this litigation with CACH of Colorado as plaintiff. However, the name of the affiant is blank and although the copy is signed, there is no printed name under the signature. The court checked the court file and the original of that document was submitted with the default judgment application in May 2013. On the court copy the name of the affiant is Shaneka Sonnier and she

asserts she is a "custodian of record" for CACH, LLC a/k/a CACH of Colorado, LLC. She signed the document on behalf of CACH, LLC. Like the complaint, this document lists Citibank South Dakota, NA as the original creditor and not Citibank, NA.

How can she be the custodian of records for a non-existent entity. Rather than using a/k/a (also known as), the correct designation should have been "improperly listed as" or something similar to that. In any case, she does not have any personal knowledge of the creation or maintenance of the original account. Her knowledge is only obtained by her reviewing whatever records CACH, LLC received from Citibank South Dakota.

Account Statement.

Plaintiff has submitted an "Account Statement" from "Sears" for a "Sears Premier MasterCard" which has payments sent to "Sears Credit Cards" in Columbus, Ohio. Billing inquiries are sent to "Sears Credit Cards" in Sioux Fall, South Dakota. Nowhere in this billing statement do the words "Citibank" appear. Based on this, plaintiff needs to establish by some independent documentation that Citibank in some form ever owned this account and that fact was disclosed in writing to the defendant. Proof of the assignment from Sears to Citibank must be established or a copy of the original agreement with defendant disclosing

that Citibank was the actual card issuer and not Sears. It should be noted that there is no document provided by plaintiff to establish that defendant ever opened this account and if he did, under what terms.

Non-Military and Statute of Limitations Affirmation.

This document was presented as part of the papers required to be filed with the clerk of the court to obtain a default judgment [Uniform Rules for the New York City Civil Court §208.14-a]. The fourth paragraph of the affirmation states: "4. The cause of action in the instant matter accrued outside New York, in the state of Delaware. The statute of limitations for actions in contract in the State of Delaware is six years...."

There is a major problem with this representation of counsel. It apparently is not correct. Delaware has a three-year statute of limitations for breach of a credit card contract [Delaware Code Annotated Title 10, §8106]. This is the proper statute of limitations to be applied and not the six year one for breach of contract alluded to, but not cited to by counsel. In fact, the New York Court of Appeals has held that when a non-resident sues on a cause of action accruing outside CPLR §202, New York's "borrowing statute" requires the cause of action to be timely both in New York and the state where the cause of action accrued [Portfolio Recovery Associates, LLC v King, 14 NY3d 410 (2010)]. The King case specifically dealt with consumer credit debt arising in Delaware, and applied the three-year Delaware statute. The same facts exist in this litigation as plaintiff asserts that the plaintiff is bound by Delaware law. So either the law in Delaware has changed or counsel is incorrect.

This case points out the weakness of the current New York rules requiring counsel to merely assert that the statute of limitations has not run. Rather than some boiler plate language in an attorney's affirmation, to be an effective assertion as to the statute of limitations controlling the contract, counsel must aver (1) which states statute of limitations apply; (2) if not New York, then what is the basis of affirming that the statute of limitation the plaintiff contends is controlling i.e. is it based on the terms of the account agreement or the state of formation of the plaintiff or where plaintiff does business; (3) a recitation of the limitations period and the section of that state's law upon which counsel is relying to make such a representation.

None of those essentials are contained in this affirmation. It is not only inaccurate but it is [*5]also fatally defective based on the standard posited by the court above. The court will not seek sanctions against counsel because counsel was "just doing what all the other kids were doing" that is filing affirmations containing only boiler plate language in regard to the applicable statute of limitations. But as your mother pointed out, "if the other kids all jumped off the cliff you don't have to do so too" (unless of course your last name is "lemming"). At least counsel herein did identify the state law which is applicable and attempt to apply what counsel believed is the statute of limitations.

5. Proof of Assignment of the Account.

There is no proof of the assignment of the account from Sears to Citibank, South Dakota to Citibank to CACH, LLC, or CACV of Colorado, LLC or CACH of Colorado, LLC.

The burden is on the assignee plaintiff to prove the validity of the assignment and the failure to establish that the plaintiff is the assignee of the account precludes that entity from maintaining the action [Citibank, NA v Martin, 11 Misc 3d 219 (2005); Rab Performance Recoveries, LLC v Scorsonelli, NYLJ, 6/25/09].

Plaintiff has not established that notice of the assignment from the original creditor to the plaintiff was given to the debtor.


6. Affidavit of Records Custodian.


As an exhibit in its opposition to defendant's cross-motion there is an "affidavit" of Peter Huber as an authorized agent and records custodian of "plaintiff in the above entitled action." The plaintiff referred is the non-existent CACH of Colorado, there being no allegation that such entity is a scrivener's error or misnomer. Being the custodian of records for a non-existent business entity has to rank up there with other jobs such as "pothole inspector" or some other "position" created by Tammany Hall; Maytag repairperson, if you believe the commercials; or salesperson of left-handed smoke shifters and sky-hooks at a camping goods store.


The affidavit goes on to say Huber reviewed documents received from Citibank, South Dakota, yet the documents attached are from Citibank. How Huber would have knowledge of the truth of the contents or the accuracy of documents from the seller of the debt is not explained. He could swear that he has copies of those documents maintained in his employer's records, but not that the contents are true. How can an employee of the assignee have any personal knowledge of the formation of the original account or the practices of the assignor? Such affidavits are not [*6]admissible [CACH, LLC v NE Enterprises, LLC, 43 Misc 3d 1232(A) (2014)]. Conclusory affidavits or those from persons lacking personal knowledge of the facts are not sufficient [CACH, LLC v Fatima, 32 Misc 3d 1231(A) (2011)].


Attached to the affidavit is a document labeled "Exhibit 1, Asset Schedule" purportedly showing the purchase of a "Lot" of "Sears MC Fresh" and "Sears MC Early Out" without explanation as to what these entries mean. Both of those entries have a "cut-off date" of "2/10/12." Is a "cut-off date" the same as a "charge-off date?" This is not explained. Redacted from the record are the number of accounts purchased and the sale balance for the accounts. Plaintiff has determined that it is irrelevant that it bought this and thousands of accounts for about five-cents on the dollar.


Another attachment is purportedly the redacted electronic print-out of a spread sheet showing defendant's account information. Evidence contained in reproductions of an electronic spreadsheet must satisfy applicable business record foundational requirements [Palisades Collection, LLC v Kedik, 67 AD3d 1329 (2009); CPLR §4518 & §4539; State Technology Law ]. The account number which plaintiff lists in the complaint is listed as is the date the account was opened, May 2, 2004. The balance due is set forth, along with the charge off date of January 9, 2012, defendant's date of birth, name, address, telephone number, last four digits of defendant's social security number. Also listed is the date of last payment, June 5, 2011. If that is correct, then when this action was filed in March 2013, the Delaware statute of limitation would not have run. But, because this is the record prepared by the seller of the date, plaintiffs employee cannot establish the foundational prerequisites to have the document be admissible in evidence. He has no personal knowledge of the contents of the document.


Conclusion:


Plaintiffs motion to amend the caption is denied. Defendant's motion to dismiss the complaint is granted.


The error in commencing this action in the name of a non-existent entity is not a ministerial error capable

of correction. No such entity ever existed, so it could not validly commence this litigation. The fact that plaintiff asserts that this is a "scrivener's error" is not credible as there are least three other actions in Richmond County filed for CACH of Colorado, LLC, more than 900 in Civil Court citywide, and if the submission from the defendant is correct, over 2,200 statewide.

Perhaps the Office of Court Administration should consider issuing an order administratively dismissing all of these actions and vacating any judgments entered as there is no such entity as CACH of Colorado, LLC. The court must wonder if defendants are making payments pursuant to stipulations of settlement or marshals are taking steps to enforce judgments, [*7]to whom are payments being made?

Further, examination of plaintiffs pleadings establish that even if the action was commenced in the name of an existing entity, there is insufficient documentation to support entry of a default judgment. The only reason one was entered is because of the lax standards maintained by the courts of New York in reviewing such applications. The new rules effective October 2014 should eliminate some of these judgments previously entered based on a minimal amount of documentation.

In order for any plaintiff to make a representation that the statute of limitations in the consumer credit action has not run, the affiant must state:

What state's statute of limitations applies to the transaction.

What the basis is of the affiant making that representation. If from the terms of the credit card agreement, then referring to the section of the agreement and attaching a copy. If based on the place of incorporation or principal office of the plaintiff, then attachment of a copy of documentation from that jurisdiction that the plaintiff is currently registered as an entity in that jurisdiction.

What is the statute of limitations in that jurisdiction with a citation to the proper statute and section.

Plaintiffs complaint is dismissed.

December 8, 2014

Papers

Numbered

Notice of Motion and Affidavits Annexed . .1

Notice of Cross Motion and Opposition .....2

Affirmation in Opposition to Cross-Motion ...3

\

The foregoing constitutes the decision and order of the court.



PapersNumbered

Notice of Motion and Affidavits Annexed . .1

Notice of Cross Motion and Opposition .....2

Affirmation in Opposition to Cross-Motion ...3

\
Judge, Civil Court

PapersNumbered

Notice of Motion and Affidavits Annexed . .1

Notice of Cross Motion and Opposition .....2

Affirmation in Opposition to Cross-Motion ...3